UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GEORGE MASON UNIVERSITY FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> THOMAS W. MORRIS, in his individual capacity, and <br><br> SHARON DUNCAN, in her individual capacity, <br><br> Defendants. | Civil Action No. 3:11–CV–848 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on a Motion to Dismiss Amended Complaint, or in the Alternative, Motion to Transfer, filed by *pro se* Defendants Thomas W. Morris and Sharon Duncan. (ECF No. 43). After examining the record and the briefs filed by both parties, the Court finds that oral argument is unnecessary because the facts and contentions are adequately presented and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons that follow, the Court DENIES Defendants' Motions.

**I. BACKGROUND**

On December 19, 2008, a Virginia Beach Circuit Court entered a final judgment in the amount of $100,000 against Defendants in favor of The George Mason University Foundation ("GMUF") for attorneys' fees and costs incurred by GMUF for Defendants' contempt of court and repeated defiance of court orders. The Virginia Beach Circuit Court further awarded Trust Company of Virginia ("the Trust Company" or "TCV"), as conservator of the estate of Amy F.

1

Morris ("Ms. Morris"), a $1,125,222.00 joint and several judgment against Defendants. On November 26, 2012, GMUF and Karen G. Loulakis, as Executor and Trustee under the 1998 Will of Ms. Morris, executed an Instrument of Assignment. GMUF was assigned all of the Estate's right, title, and interest in the December 19, 2008, Judgment.

The judgment and finding of contempt arose from litigation initiated by Defendants on or about March 7, 2007, in the Virginia Beach Circuit Court over the guardianship and conservatorship of their mother, Ms. Morris, and the control of her estate after she lost her capacity due to Alzheimer's disease. Defendants are Ms. Morris' only children. GMUF moved for, and was granted, leave to intervene in the guardianship matter as a respondent on June 8, 2007. The Virginia Beach Circuit Court also appointed Karen G. Loulakis as legal counsel and guardian *ad litem* for Ms. Morris and enjoined Defendants from making any distributions out of Ms. Morris' assets other than distributions for those costs directly related to Ms. Morris' care while the guardianship matter was pending. Defendants moved their mother from a Virginia Beach hospital to Alabama against medical advice during the pendency of the Virginia Beach Circuit Court proceedings. Defendants then filed competing actions in Alabama Probate Court to be appointed as guardian and conservator of Ms. Morris. The Alabama court stayed its proceedings during the pendency of the Virginia action on June 29, 2007.

During the pendency of the guardianship matters and in violation of the Court's injunction, Defendants transferred Ms. Morris' property, including bank accounts and her Virginia Beach residence, to themselves. The action pending in the Virginia Beach Circuit Court went to trial on February 28 and 29, 2008. The court invalidated the transfers of Ms. Morris' estate to Defendants and ordered them to return the assets to the estate. The court also found Defendants in contempt of court and granted GMUF's motion for attorneys' fees

and costs in an amount to be later determined by the court. The Virginia Supreme Court denied Defendants' writ of appeal, as well as Defendants' motion for rehearing.

The Virginia Beach Circuit Court entered a judgment against Defendants for $100,000 on December 19, 2008. The court further entered a Final Order and Judgments against Defendants, jointly and severally, for $1,125,222.00, with interest at the legal rate until paid, in favor of the Trust Company. The Virginia Court of Appeals denied Defendants' appeal and petition for rehearing and granted summary affirmance of the Final Order and Judgments. The Virginia Supreme Court also refused Defendants' petition for appeal and petition for rehearing.

Ms. Morris died on March 25, 2011. On August 12, 2011, the Virginia Beach Circuit Court entered an Order holding that Ms. Morris' November 24, 1998 Will ("1998 Will") was her final will. Accordingly, the Virginia Circuit Court recognized Karen G. Loulakis as the Executor and Trustee under Ms. Morris' Will. On October 27, 2011, the Virginia Beach Circuit Court entered an Order holding that Ms. Loulakis, as Executor and Trustee under the 1998 Will, was the proper successor in interest to Ms. Morris. Accordingly, the Court ordered the Trust Company to pay over and deliver the December 19, 2008, Judgment and all other remaining assets of Ms. Morris' Estate to Ms. Loulakis as Executor and Trustee. The Trust Company complied with the Order and assigned the December 19, 2008, Judgment to Ms. Loulakis as Executor and Trustee. On November 26, 2011, GMUF and Karen G. Loulakis, as Executor and Trustee under the Will of Ms. Morris, executed an Instrument of Assignment that conveyed to GMUF all of the Estate's rights, title, and interest in the December 19, 2008, Judgment.

Because Defendants failed to pay GMUF under the December 19, 2008, Judgment entered against them, GMUF filed a Complaint on December 21, 2011, requesting that this

Court enter judgment against Defendants, jointly and severally, for the judgment entered against them in favor of GMUF in attorney's fees amounting to:

(a) $100,000;

(b) all accrued but unpaid legal judgment interest rate of 6%;

(c) all of the costs and expenses incurred by GMUF in enforcing the judgment; and

(d) such other relief as the Court deems reasonable and just.

Defendants moved to dismiss the case due to lack of personal jurisdiction, collateral estoppel and res judicata, or in the alternative, move to transfer venue to the United States District Court for the Middle District of Alabama. The Court DENIED both Defendants' Motion to Dismiss and Motion to Transfer on April 11, 2012. *George Mason Univ. Found., Inc. v. Morris*, 3:11-CV-848, 2012 WL 1222589 (E.D. Va. Apr. 11, 2012). Plaintiff filed an Amended Complaint on August 19, 2013 requesting that the Court enter judgment against Defendants, jointly and severally for both the aforementioned attorney's fees and the assigned December 19, 2008, Judgment against Defendants amounting to:

(a) $1,125,222.00;

(b) all of the accrued but unpaid interest at legal judgment interest rate of 6%;

(c) all of the costs and expenses incurred by GMUF in enforcing this judgment.

Defendants now move again to dismiss the Amended Complaint or, in the alternative, move to transfer venue to the United States District Court for the Middle District of Alabama.

## II. MOTION TO DISMISS

1. **Personal Jurisdiction**

   a. **Applicable Law**

In order to survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the Court must consider whether Plaintiff has made a *prima facie* showing of

personal jurisdiction over the non-resident Defendants based on their conduct with Virginia. To do so, the Court must first determine whether Virginia law authorizes jurisdiction; and second, whether a defendant has "certain minimum contacts with [Virginia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," indicating that personal jurisdiction over the non-resident defendant comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

Under the Virginia long-arm statute, a Virginia court may exercise personal jurisdiction "over a person . . . as to a cause of action arising from the person's . . . transacting any business" in Virginia. Va. Code Ann. § 8.01-328.1(A). This statute has been construed to extend personal jurisdiction to the full extent permitted by the Due Process Clause. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000). To satisfy the constitutional due process requirement, a defendant must have sufficient "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted). The minimum contacts test requires the plaintiff to show that the defendant "purposefully directed his [or her] activities at the residents of the forum" and that the plaintiff's cause of action "arise[s] out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation and quotation marks omitted). The test is meant to ensure that a defendant is not "haled into a jurisdiction" unexpectedly. *Burger King*, 471 U.S. at 475.

The due process factors for asserting specific personal jurisdiction consist of "(1) the extent to which the defendant purposefully availed [himself or herself] of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be

5

constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citation and quotation marks omitted). Once a court has determined that a defendant has purposefully availed himself or herself of the privilege of doing business there, the court must consider the additional factors of reasonableness, which include: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs Corp.*, 561 F.3d at 279 (citing *Burger King*, 471 U.S. at 477).

### b. Parties' Arguments

Defendants move the Court to dismiss the Plaintiff's Amended Complaint in its entirety for lack of personal jurisdiction. As in their previous Motion to Dismiss, Defendants point out that that Defendant Morris is an Alabama citizen that resides in Montgomery, Alabama; Defendant Duncan is a Maryland citizen that resides in Havre de Grace, Maryland; and GMUF is a Virginia corporation, which Defendants contend has already previously submitted to Alabama jurisdiction for matters related to this case.

Defendants argue that their contacts with the Commonwealth of Virginia and the Plaintiff were unsolicited, random, and attenuated. They assert that simply travelling to another state to lend emergency services, resulting a conflict with GMUF, does not satisfy the minimum contacts requirements of claiming jurisdiction over a defendant in a foreign state. Defendants contend that, while they did initially file a petition in Virginia, they immediately nonsuited it and filed a petition in the state of Alabama where Ms. Morris chose to live out the remainder of her life. Accordingly, they argue that they were involuntarily forced to

6

participate in an action in a foreign jurisdiction and should not be subject to Virginia jurisdiction.

Defendants also argue that GMUF submitted to Alabama jurisdiction. They report that the Alabama County Probate Court probated Morris' estate in April 2011. Defendants sought to be the sole beneficiaries of the estate and they allege that GMUF proffered no challenge to the will or made any claims against them for the alleged judgment. Defendants assert that rules of procedure and Alabama law require that GMUF should have filed a claim within six months of when Letters of Testamentary were issued to Defendant Morris as Executor. GMUF's failure to do so rendered any future claims null and void. Therefore, Defendants argue that Virginia lacks personal jurisdiction over them. Defendants contend that the alleged judgment GMUF brings before the Court is part of an order which was domesticated in Alabama and Maryland respectively and eventually dismissed in both jurisdictions.

Lastly, Defendants assert that the personal jurisdiction in Virginia is unreasonable and against "traditional notions of fair play and substantial justice" where the Virginia Beach Circuit Court has issued a *capias* order with no bond against Defendants. They argue that the *capias* order renders justice impossible where Defendants are faced with the untenable choice of defending themselves in criminal court while facing a significant risk of losing substantial property or defending themselves in civil court while facing the same significant risk of losing substantial personal property.

GMUF argues that Defendants are attempting to relitigate personal jurisdiction issues that have already been decided by the Court. They argue that the jurisdictional analysis has not changed and that the Court should deny Defendants' Motion to Dismiss.
They point out that the Court has already held that: (1) Defendants purposefully availed themselves of the privilege of conducting activities in Virginia by filing the original litigation

7

that gave rise to the judgment at issue there; (2) Defendants initiated a pattern of conscious and intentional utilization of the courts of the forum state; and (3) that there is no unfairness in finding that they consented to personal jurisdiction by filing the original suit.

Plaintiff avers that the existence of a pending *capias* order does not render personal jurisdiction constitutionally unreasonable. They argue that Defendants' own contempt of court during the course of the litigation in Virginia should not somehow bar further litigation of claims arising from the orders in Virginia itself. To the contrary, they argue that the *capias* order is further evidence of Virginia's strong interest as the forum state in adjudicating disputes arising from the enforcement of such orders.

Defendants rebut that they did not have sufficient contact with Virginia as they legally attempted to remove themselves from the jurisdiction. They argue that the only reason they filed the petition initially in Virginia was because the Virginia Beach hospital where Ms. Morris was "tied up to a bed" would not recognize Defendant Morris' Healthcare Power of Attorney. (Defs.' Reply 4.) Moreover, they allege once again that they properly nonsuited the action and that the presiding judge, Judge Shockley, admitted on the record that Defendants did in fact file their nonsuit prior to GMUF's filing of counterclaims. They contend that Judge Shockley mistakenly proceeded with the matter, despite the dictates of Virginia law, and submitted a response contrary to the fact of the case.

c. **Analysis**

This Court has already determined that Defendants purposefully availed themselves of the privilege of conducting activities in Virginia and that GMUF's claims arise out of Virginia:

> GMUF's lawsuit to enforce the judgment clearly arises directly from the action filed by the Defendants in the Circuit Court of Virginia Beach. The Defendants' contention that they legally and properly nonsuited their case fails as the Circuit Court of Virginia Beach denied the nonsuit, the case proceeded to trial, and the Defendants unsuccessfully appealed the court's order.

8

*George Mason Univ. Found.*, 2012 WL 1222589, at *6. As such, Defendants' argument that their contacts with the Commonwealth of Virginia and the Plaintiff were unsolicited, random, and attenuated fail because it is virtually identical to the argument they proffered in their previous Motion to Dismiss. Similarly, Defendants' argument based on Alabama court jurisdiction fails because it has previously been addressed by this Court.

Regarding the "unreasonableness" of personal jurisdiction in light of the *capias* order, this Court has held that "the exercise of personal jurisdiction is constitutionally reasonable as it was Defendants' original choice to sue in Virginia and there is 'no conceivable unfairness' in finding that they consented to personal jurisdiction by filing the original suit." *Id.* at *6. Moreover, under the factors outlined in *Consulting Engineers Corporation*, the exercise of personal jurisdiction may not be unreasonable. First, litigating in Virginia would burden Defendants due to the cost of litigating outside of their home state of Alabama and they face criminal charges upon their return to Virginia. Second, Virginia has a very strong interest in enforcing *capias* orders and a "manifest interest" in affording its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Burger King,* 471 U.S. at 473. Third, Plaintiff is a citizen of Virginia and has an interest of obtaining convenient and effective relief in the state. Further, GMUF chose to bring this suit in Virginia and a plaintiff's choice of forum generally is entitled to substantial weight. *Acterna, L.L.C. v. Adtech, Inc.,* 129 F. Supp. 2d 936, 938 (E.D. Va. 2001). Fourth, neither of the parties asserts any particular facts with regards to the factors of the states' shared interest in efficient resolution of disputes and in furthering substantive social policies. In sum, the interests of both Plaintiff and the Commonwealth of Virginia outweighs the burden on the Defendants. Therefore, the Court DENIES Defendants' Motion to Dismiss for lack of personal jurisdiction.

2. **Res Judicata**

### a. Applicable Law

The doctrine of res judicata may properly be raised in a motion to dismiss. *Thomas v. Consolidation Coal Co.*, 380 F.2d 69 (4th Cir. 1967). The party asserting issue or claim preclusion has the initial burden of affirmatively proving each element of the defenses. *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991). Under the theory of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion bars such claims "only when three elements are satisfied: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999). The doctrine of issue preclusion, bars relitigation of (1) issues of fact or law that are identical to issues in the first action; where (2) the issues were actually determined in a prior judgment, (3) necessary to the prior judgment, and (4) the prior judgment is final and valid; and where (5) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). "A non-party is in privity with a party for res judicata purposes in three instances. First, if he has succeeded to the party's interest in property, he is bound by prior judgments against the party. Second, if he controlled the prior litigation, he is bound by its result. Third, he is bound if the party adequately represented his interests in the prior proceeding." *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990).

### b. Parties' Arguments

Defendants allege that the issues relevant to the December 19, 2008, Virginia Beach Circuit Court Judgment were heard before an Alabama Circuit Court that ultimately dismissed TCV's efforts to domesticate the judgment on June 23, 2011. Defendants argue that GMUF has violated the doctrines of res judicata and collateral estoppel—or issue and claim preclusion—by attempting to retry these events in a seemingly more favorable venue after the dismissal in Alabama Circuit Court and TCV's subsequent failure to appeal the decision.

In response, regarding Count I, GMUF asserts that the Court has already held that GMUF is not attempting to relitigate this issue since it was not a party to the action addressed by Defendants, nor did it have a full and fair opportunity to litigate the claim. Regarding Count II, GMUF argues that neither theory requires dismissal of this case because the June 23, 2011, Alabama Circuit Court Order was not a final, valid judgment on the merits of TCV's, and thus GMUF's, claim. They admit that TCV attempted to enforce the Final Order and Judgment in Alabama against Defendant Morris. They argue, however, that the Alabama Court dismissed the case as a result of Ms. Morris' death simply because TCV lacked continuing authority to enforce a judgment as Ms. Morris' conservator.[1] They argue that the Alabama Circuit Court did not make any legal ruling regarding the validity of any purported will of Ms. Morris, or identify the proper personal executive of Ms. Morris' estate.

### c. Analysis

As to Count I, this Court has already held that GMUF is not attempting to relitigate this issue since it was not a party to the action addressed by Defendants nor did it have a full and fair opportunity to litigate the claim. *See George Mason Univ. Found.*, 2012 WL 1222589, at \*6-8. As such, Defendants' arguments that res judicata requires dismissal of the claim fails.

---

[1] *See* Va. Code Ann. § 64.2-2026(B) ("A guardianship or conservatorship shall terminate upon the death of the incapacitated person.").

11

As to Count II, GMUF seeks to enforce the December 19, 2008, Virginia Beach Circuit Court Judgment after Karen G. Loulakis, as Executor and Trustee under the 1998 Will of Ms. Morris, executed an Instrument of Assignment that conveyed to GMUF all of the Estate's rights, title, and interest. (Amended Compl. ¶ 35). As an assignee, GMUF is a successor in interest to TCV as assignor. *See Latham, N.A.*, 896 F.2d at 983; Restatement (Second) of Judgments §§ 43, 75 (1982). Based on the facts set forth in the Amended Complaint and subsequent filings, Defendants' claim that GMUF is attempting to relitigate the enforcement of the 2008 Judgment in Virginia court after failing to domesticate the judgment in Alabama courts is unsupported. The case relied upon by Defendants is one initiated in May 2011 by the Trust Company of Virginia for enforcement of the judgment rendered in favor of Ms. Morris. That case was dismissed by the Circuit Court of Montgomery County, Alabama upon the death of Morris on June 23, 2011. Defendants, however, have not proffered any evidence conclusively showing that the Alabama Circuit Court decided the case on the merits. Therefore, they have not met their burden to establish the preclusive effect of the Alabama Circuit Court Judgment. *See Meekins*, 946 F.2d at 1057. Accordingly, the Court DENIES Defendants' Motion to Dismiss on the bases of issue and claim preclusion.

3. **Full Faith and Credit**

   a. **Applicable Law**

Given the fact that each state has its own judicial system capable of adjudicating the rights and responsibilities of the parties before it, "there is always a risk that two or more States will exercise their power over the same case or controversy, with the uncertainty, confusion, and delay that necessarily accompany relitigation of the same issue." *Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982). Recognizing this problem, the Framers provided that "Full Faith and Credit shall be given in

each State to the Public Acts, Records, and Judicial Proceedings of every other State." U.S. Const. art. IV § 1. "[T]he Framers intended it to help weld the independent states into a nation by giving judgments within the jurisdiction of the rendering state the same faith and credit in sister states as they have in the state of the original forum." *Johnson v. Muelberger*, 340 U.S. 581, 584 (1951). As such, "local policy must at times be required to give way, such 'is part of the price of our federal system.'" *Sherrer v. Sherrer*, 334 U.S. 343, 355 (1948). "This constitutional purpose promotes unification . . . [and] leaves each state with power over its own courts but binds litigants, wherever they may be in the Nation, by prior orders of other courts with jurisdiction." *Johnson*, 340 U.S. at 585. "The principles of res judicata apply to questions of jurisdiction as well as to other issues, as well to jurisdiction of the subject matter as of the parties." *Id.* (citing *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939)) (internal citations omitted).

Typically, a "judgment will be recognized and enforced in other states even though an error of fact or of law was made in the proceedings before judgment." Restatement (Second) of Conflict of Laws § 106 (1971); *see generally, e.g.*, *Milliken v. Meyer*, 311 U.S. 457, 461 n.8 (1940); *Glassman Const. Co. v. U.S. for Use & Benefit of Clark-Fontana Paint Co.*, 421 F.2d 212, 215 n.3 (4th Cir. 1970). However, "a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." *Underwriters Nat. Assur. Co.*, 455 U.S. at 704 (citing *Durfee v. Duke*, 375 U.S. 106, 110, (1963)). "Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Underwriters Nat. Assur. Co.*, 455 U.S. at 704-05. Such an inquiry by a second court is constrained by the general rule that "a

13

judgment is entitled to full faith and credit-even as to questions of jurisdiction-when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee*, 375 U.S. at 111.

### b. Parties' Arguments

Plaintiff contends that Defendants are bound by the December 19, 2008, Judgment in the Virginia Circuit. They simply assert that this Court should enforce that judgment on both Counts I and II.

Defendants assert that Plaintiff's attempt to domesticate its 2008 Judgment failed in Alabama where an Alabama Circuit Court dismissed the related case. They argue that Plaintiff is attempting to circumvent the Alabama Circuit Court Order by appealing to this Court in an effort to enforce its December 19, 2008, Judgment. Defendants aver that this attempt should fail because this Court must accord full faith and credit to the Alabama Circuit Court Order.

### c. Analysis

As to Count I of Plaintiff's Complaint, this Court previously held that neither res judicata nor full faith and credit were at issue when it denied Defendants' previous Motion to Dismiss. *George Mason Univ. Found.*, 2012 WL 1222589, at *6-8. The result is the same regarding this instant Motion.

Regarding Count II, GMUF's attempt to enforce the December 19, 2008, Virginia Circuit Court Judgment is complicated by the fact that the legitimacy of the assignment of these rights is in question. Plaintiff alleges that the Alabama Circuit Court dismissed TCV's earlier attempts to domesticate the December 19, 2008, Virginia Circuit Court Judgment because "[a]fter Ms. Morris' death, the Alabama state court recognized that TCV could no longer enforce the judgment on behalf of Ms. Morris' Estate as its role as Conservator terminated upon her death." (Pl.s' Mem. Opp. of Defs.' Mot. to Dismiss 5). Accordingly, they essentially argue that

this case is a simple matter of enforcing the Virginia Circuit Court's December 19, 2008, Judgment that was assigned to it by Ms. Loulakis as Executor in 2011. However, the jurisdiction of the Virginia Beach Circuit Court to probate Ms. Morris' 1998 Will is in question in light collateral proceedings in the state of Alabama. Alabama and Virginia state courts each appear to have recognized different Executors to Ms. Morris' estate under separate wills. As such, there is a question as to which state court should be accorded full faith and credit regarding their jurisdictional findings and probate of Ms. Morris' respective wills. Further review of the record is required in order to determine which state court order is valid. Accordingly, the Court DENIES Defendants' Motion to Dismiss on the bases of full faith and credit.

### III. MOTION TO TRANSFER VENUE

1. **Applicable Law**

In diversity cases, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). A diversity action may also be brought in a judicial district where any defendant resides, if all defendants reside in the same state, or where any defendant is subject to personal jurisdiction, if there is no other district in which the action may be brought. 28 U.S.C. § 1391(a)(1), (3). As a result of the "substantial part" wording of § 1391, it is possible for venue to be proper in several judicial districts. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).

A district court may transfer a civil action to any other district or division where it could have originally been brought if in the interest of justice or for the convenience of parties and witnesses. 28 U.S.C. § 1404(a). In determining whether to grant a motion to transfer venue, the Court must "must consider and balance a number of factors, including ease of access to sources of proof; the convenience of the parties and witnesses; the cost of obtaining

the attendance of witnesses; the availability of compulsory process; the interest in having local controversies decided at home . . . and the interest of justice." *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000).

### 2. Parties' Arguments

In the alternative to a motion to dismiss for lack of personal jurisdiction, Defendants argue that transfer to the Middle District of Alabama is appropriate as several Alabama witnesses would be "grossly inconvenienced" by having to travel to Richmond. Additionally, they argue that venue in the Commonwealth of Virginia is contrary to due process where Defendants are being attacked with a legal matter in a forum that adversely affects their ability to put forth a defense. In short, they assert that the *capias* order in Virginia requires a transfer of venue.

GMUF asserts that the Court has already found venue to be proper. Further, they argue that the Court should deny Defendants' motion for transfer of venue as inexcusably late as the matter has been set for trial on November 12, 2013. Lastly, they argue that Defendants provide no support for their argument that the court should transfer venue because the forum state has issued a *capias* order against them.

### 3. Analysis

This Court has previously weighed the relevant factors and determined that "GMUF's choice of venue is entitled to substantial weight, party convenience is given less weight, and the interests of justice do not weigh in favor of a transfer." *George Mason Univ. Found.*, 2012 WL 1222589, at *9. The Court's holding is the same despite Defendants' new arguments based on the *capias* order against them in the forum state because the very same issue was before the court when it denied Defendants' previous Motion the Transfer.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendants' Motions.

Let the Clerk send a copy of this Memorandum Opinion to all parties and counsel of record.

An appropriate Order shall issue.

>_____/s/_____
> James R. Spencer
> United States District Judge

ENTERED this __17th__ day of October 2013.